**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MALCOLM E. TRAYWICKS, SR., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. CIV-11-340-D |
| | ) |
| AMERICAN NATIONAL PROPERTY | ) |
| & CASUALTY COMPANY, | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

Before the Court is the motion for summary judgment of Defendant American National Property & Casualty Company ("ANPAC") [Doc. No. 12]. Plaintiff timely responded, and ANPAC filed a reply. Although Plaintiff filed a timely response, he also filed a motion to extend the deadline for his response, arguing that additional discovery was needed to allow him to fully respond to the motion. On August 16, 2011, the Court entered its Order [Doc. No. 22] granting Plaintiff's motion and finding that, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Plaintiff was entitled to conduct discovery to prepare a response to the summary judgment motion. The Court granted Plaintiff's request to extend the response deadline to September 9, 2011. Because Plaintiff had already responded, the Court authorized him to file a supplemental response on that date, and it also granted ANPAC leave to file a supplemental reply. The extended deadline expired, and Plaintiff did not file a supplemental response to the summary judgment motion.

However, Defendant later moved to supplement its motion, seeking to add argument based on the deposition of Plaintiff. Plaintiff did not oppose that request, and the Court granted Defendant leave to supplement its motion and authorized Plaintiff leave to respond to the supplemented motion.

The briefing is now complete.

Background:

Plaintiff alleges that ANPAC breached a contract of insurance by denying his claim pursuant to a policy issued by ANPAC and covering accidental damage to his automobile. He also contends that, in denying coverage, ANPAC acted in bad faith. ANPAC denies liability, arguing that the insurance policy was rendered void *ab initio* because, in investigating Plaintiff's claim, it determined that Plaintiff made material misrepresentations in his application for the insurance policy. In its summary judgment motion, ANPAC seeks judgment on both claims asserted by Plaintiff.

Summary judgment standards:

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To avoid summary judgment, a plaintiff must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Swackhammer v. Sprint/United Mgmt. Co.,* 493 F.3d 1160, 1167 (10th Cir. 2007); *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). However, to establish the existence of a "genuine" material factual dispute, the nonmoving party must present evidence to show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 45 U.S. 574, 588 (1986).

Where the undisputed facts establish that a plaintiff cannot prove an essential element of a

cause of action, the defendant is entitled to judgment on that cause of action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, it is not the responsibility of the summary judgment movant to disprove the plaintiff's claim; rather, the movant need only point to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citations omitted).

In opposing a summary judgment motion, a plaintiff cannot rely on the allegations in his complaint, his personal beliefs, or conclusory assertions; rather, he must come forward with evidence outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment is sought. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324; *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003). The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *Adler,* 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied,* 506 U.S. 1013 (1992)). It is not the responsibility of the Court to attempt to locate evidence not cited by Plaintiff which could support his position. *Adler,* 144 F.3d at 671.

The Court may not weigh the credibility of witnesses or other evidence in ruling on a motion for summary judgment; evaluating credibility and weighing evidence are functions reserved for the jury. *Anderson,* 477 U.S. at 295.

<u>The record before the Court:</u>

It is not disputed that Plaintiff's 2004 Cadillac DeVille was insured under ANPAC Oklahoma Automobile Policy No. 35 A-69140A ("Policy"), providing coverage for the time period

of April 4, 2010 to October 4, 2010.  A copy of the Policy is submitted as ANPAC Exhibit 2.  The parties agree that Plaintiff completed the application for the Policy on April 3, 2006, and he made timely premium payments.  ANPAC Ex. 4.

On May 11, 2010 Plaintiff submitted to ANPAC a claim based on May 10, 2010 hail damage to his covered automobile; the claim was assigned ANPAC Claim No. 35-A-23K945.  *See* ANPAC Ex. 3.  On May 15, 2010 Plaintiff's automobile was inspected by ANPAC Senior Staff Appraiser Rob Pavlock ("Pavlock"), who then prepared an estimate and a "Claim Summary."  ANPAC Exs. 8 and 9.  Pavlock took photographs and, based on his inspection, concluded the damage was not caused by hail. ANPAC Exs. 8, 9, 19.

Plaintiff withdrew his May 10 hail damage claim on May 17, 2010.  ANPAC Exs. 7, 10. On that same date, however, he submitted a second claim based on hail damage occurring on May 16, 2010;[1] the May 17 claim was assigned ANPAC Claim No. 35-A-23N623.  ANPAC Exs. 11, 12.  That claim was also investigated by Pavlock, who concluded that at least some of the damage was not caused by hail.[2]   ANPAC Exs. 9, 13.

---

[1] In an affidavit, Plaintiff states that, when the May 16 damage occurred, he contacted his ANPAC agent, who told him to withdraw the first claim and submit a new claim.  Affidavit of Plaintiff, Plaintiff's Ex. 2.

[2] Pavlock's opinions regarding his May 15 inspection are stated as undisputed facts in ANPAC's Factual Statement Nos. 13 and 14, and his conclusions regarding the May 17 claim are presented as undisputed in ANPAC's Factual Statement Nos. 18 and 19.  ANPAC motion, pp.4-5.  In his response, Plaintiff stated he could not admit or deny those statements because Pavlock had not been deposed prior to Plaintiff's July 18, 2011 response deadline. Response at p. 3. Although the Court authorized Plaintiff to supplement his response after conducting additional discovery, Plaintiff did not do so.  However, Plaintiff's response brief makes clear that he fundamentally disputes Pavlock's findings, as he asserts that the damage to his vehicle was caused by the May 2010 hail storms, and he denies that he intentionally caused any of the damage.  *See* Plaintiff's response, pp. 3, 14, and Ex. 2.

During its investigation of Plaintiff's hail damage claim, ANPAC obtained from Plaintiff a sworn statement in the form of an examination under oath ("EUO"), a copy of which is submitted as ANPAC Exhibit 14. The statement was taken by an attorney for ANPAC; Plaintiff was not represented by counsel. During the EUO, Plaintiff was asked if he had ever been charged with a felony, and he responded affirmatively. He explained that, in 1961, he was charged and convicted of rape, and he was sentenced to 15 years in prison. ANPAC Ex. 14, p. 38, lines 7-25. He also testified that he served five years, and was released in 1969. *Id.* at p. 39, lines 1-10. Plaintiff further testified that he did not recall whether he was asked any personal background questions when he applied for the Policy, and does not think that he actually met with Doug Miller, the agent who processed the application for the Policy. ANPAC Ex. 14, pp. 133-134, 136-138. Specifically, Plaintiff testified he did not recall whether he was asked if he or any household member had a prior felony conviction. *Id.* at p. 138, lines 17-25. He further testified that, had the question been asked, he probably would have answered "no" because the conviction was more than 50 years old, he had chosen "not to remember it," he believed the conviction was unjust, and his family had suffered as a result. ANPAC Ex. 14, p. 140, lines 20-25. In addition, Plaintiff testified that, if he had been asked the question and responded negatively during the Policy application process, his answer would have been false.[3] *Id.* at p. 141, lines 2-9.

It is not disputed that the "General Conditions" section of the Policy contains an express provision entitled "Concealment or Fraud," which provides:

---

[3]During the EUO, Plaintiff was also asked about a 1993 conviction for possession of marijuana; he admitted the conviction. However, the record reflects this was a misdemeanor offense rather than a felony, and Plaintiff received a one-year suspended sentence. ANPAC Exs. 17, 18, and 19.

> If you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss, then this policy is void as to you and any other insured.

Policy, ANPAC Ex. 1, p. 10. It is further undisputed that the written application for the Policy contains a section entitled, "Underwriting Questions." That section includes the questions, and Plaintiff's answers, during the application process; the first question asks: "Have you or any household member ever been convicted of a felony?" The response reflected on the application is "No." ANPAC Ex. 4, p. 2.

According to ANPAC insurance agent Doug Miller, he assisted Plaintiff in the Policy application process. Affidavit of Doug Miller, ANPAC Ex. 5. Miller states he orally asked Plaintiff the underwriting questions on the application, and he recorded Plaintiff's responses in writing. This conflicts with Plaintiff's statements during the EUO, as Plaintiff testified he did not recall Doug Miller being present when he applied for the Policy; he recalled that Miller was out of the office at the time and that Plaintiff met with another male agent, whose name he did not recall. EUO, ANPAC Ex. 14, pp. 134-135.

In his affidavit, submitted as Exhibit 2 to his response brief, Plaintiff states that, if he responded negatively to the Policy application question regarding the existence of a prior felony conviction, he did not do so with the intent to deceive ANPAC. Plaintiff's Ex. 2, ¶ B. He also stated he believed that, because the conviction occurred more than 50 years earlier, it had been expunged by the time he applied for the Policy, and it was no longer a part of his criminal record. Plaintiff also did not believe the existence of that conviction would have affected ANPAC's decision to issue a policy insuring his vehicle. *Id.,* ¶¶ B and C.

In its supplemental brief, ANPAC notes that, during his deposition, Plaintiff was asked to

review a copy of the questions and answers posed during his application for the Policy. During the deposition, he testified that he recalled having been asked the question about a prior felony conviction and that he answered "no." Plaintiff's dep., p. 35, ANPAC supplemental Ex. 1; Policy application, ANPAC supplemental Ex. 2.

According to ANPAC Underwriting Manager Denicia Kroger, ANPAC would not have insured Plaintiff if it had known of the felony conviction. Affidavit of Denicia Kroger, ANPAC Ex. 6. Ms. Kroger states ANPAC's underwriting requirements prohibit issuance of insurance to convicted felons.[4]  *Id.*

The parties agree that, on October 27, 2010, ANPAC sent Plaintiff a written notice that it had completed its investigation of the May 16, 2010 claim. ANPAC Ex. 15. ANPAC advised Plaintiff that its "claim investigation reveals that you have breached the Concealment or Fraud condition within the policy of insurance both in your application for the policy of insurance and in the presentment of your claim for hail damage to your automobile." *Id.*  ANPAC further stated, "pursuant to the terms of the policy and Oklahoma law, ANPAC hereby declares its intention to deny your claim and void the policy as of the date of the loss, May 16, 2010," and refund the unearned premium from the date of the loss. ANPAC Ex. 15. ANPAC refunded to Plaintiff the amount of $1,481.66 by check dated November 4, 2010. ANPAC Ex. 16.

Application:

---

[4]Ms. Kroger's statement is submitted by ANPAC as an undisputed fact in its Factual Statement No. 10. In response, Plaintiff states he cannot admit or deny the statement because discovery is incomplete. As noted, *supra,* the Court authorized Plaintiff to supplement his response after conducting discovery, but Plaintiff has not done so, nor does he present any contrary evidence in his response brief. Thus, these facts are deemed admitted for purposes of the summary judgment motion. Fed.R. Civ.P. 56(e); LCvR 56.1(c).

Breach of contract of insurance:

ANPAC contends the undisputed facts in the record establish that, as a matter of law, it is entitled to judgment on Plaintiff's claim that the contract of insurance was breached. ANPAC argues that there could be no breach because it voided the Policy when its investigation revealed that Plaintiff had falsely denied the existence of his prior felony conviction. ANPAC argues that, pursuant to Oklahoma law and its own underwriting requirements, it was entitled to void the Policy because Plaintiff intentionally concealed or misrepresented the existence of a prior felony. According to ANPAC, it would not have issued the Policy if it had known that Plaintiff had been convicted of the felony.

In its supplemental brief, ANPAC argues that Plaintiff can no longer argue that he does not recall whether he was asked about a prior felony conviction when he completed the Policy application because he testified in his deposition that he was asked the question. Because he also admitted in his deposition that he answered "no" to that question when, in fact, he had been convicted of a felony, ANPAC argues it is entitled to judgment as a matter of law because it would not have issued the policy if it had known of his felony conviction.

Plaintiff's supplemental response argues that his deposition is consistent with his sworn statement in the EUO, as he disclosed at that time that he had a 1961 rape conviction. According to Plaintiff, his recollection regarding the questions asked during the Policy application process was refreshed when he was shown the Policy application during his deposition. Thus, he does not dispute that the question was posed at that time, and he does not dispute that he answered "no." Plaintiff reiterates the argument, however, that he lacked the intent to deceive ANPAC when he failed to disclose a felony occurring fifty years prior to the application. Furthermore, he contends

that a 1961 rape conviction could not have been material to the risk assumed by ANPAC in issuing a vehicle insurance policy in 2006, and that Oklahoma law requires ANPAC to prove both an intentional misrepresentation and materiality in order to avoid its Policy obligations. At a minimum, Plaintiff argues, the record reflects disputed facts precluding summary judgment on this claim.

Under Oklahoma law, an insurance policy is a contract subject to general interpretation principles of ordinary contract law. *IDG, Inc. v. Continental Casualty Company*, 275 F. 3d 916 (10th Cir. 2001).[5] Thus, an unambiguous insurance policy is interpreted according to the plain meaning of the language in the policy. *VBF, Inc. v. Chubb Group of Insurance Companies*, 263 F. 3d 1226 (10th Cir. 2001).

Although Oklahoma law provides that an insurer may avoid liability under a policy based on a material misrepresentation in the policy application, the applicable statute imposes express limitations on the insurer's ability to do so. Okla. Stat. tit. 36 § 3609. The statute provides in pertinent part:

> Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:
>
> 1. Fraudulent; or
>
> 2. Material either to the acceptance of risk, or to the hazard assumed by the insurer; or
>
> 3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

Okla. Stat. tit. 36 § 3609(A). The obligation to provide coverage is not excused unless the insurer

---

[5] The ordinary rules of interpretation are set forth in a statutory scheme found at Okla. Stat. tit. 15 § 151, *et seq.*

establishes that the insured's misrepresentation, omission, incorrect statement or concealment of facts was made with the intent to deceive the insurer. *Hays v. Jackson National Life Ins. Co.,* 105 F.3d 583, 588 (10th Cir. 1997) (applying Oklahoma law).

In *Hays*, the Tenth Circuit noted Oklahoma courts have consistently held § 3609(A) requires proof of intent to deceive. In *Massachusetts Mutual Life Ins. Co. v. Allen*, 416 P. 2d 935, 940 (Okla. 1965), the Oklahoma Supreme Court expressly held that proof of a material misrepresentation in an insurance policy application requires the insurer to show the insured made the statement "with the knowledge that it is untrue and with an intent to deceive," or that he stated a fact "positively as true without knowing it to be true," and the statement or omission "has a tendency to mislead, where such fact in either case is material to the risk." *Id.* That § 3609(A) requires the intent to deceive was subsequently reaffirmed in *Brunson v. Mid-Western Life Ins. Co.,* 547 P. 2d 970, 973 (Okla. 1976) and *Claborn v. Washington Nat'l Ins. Co.,* 910 P. 2d 1046, 1049-50 (Okla. 1996).

The insurer relying on § 3609(A) to avoid a policy obligation bears the burden of proving the elements necessary to avoid liability under the policy at issue:

> Thus, in order for an insurer to escape liability under this section for misrepresentation in the application process, the insurer bears the burden of proof to show not only that the statements were untrue, but also that the statements were willfully false, fraudulent and misleading, that the statements were made in bad faith, and that the applicant's alleged misstatements were relied on by the insurer.

*City Natl. Bank and Trust Co. v. Jackson Nat. Life Ins.*, 804 P.2d 463, 466 (Okla. Civ. App.1990) (citing *Allied Reserve Life Ins. Co. v. Pierson*, 357 P.2d 205 (Okla.1960); *Republic Life Ins. Co. v. Tourtellotte*, 105 P.2d 254 (Okla. 1940); *Prudential Ins. Co. of America v. Zak*, 94 P.2d 889, 890 (Okla. 1939); *United Ben. Life Ins. Co. v. Knapp*, 51 P.2d 963 (Okla. 1936)). "Where the evidence is conflicting as to either insured's state of health at the time of application, or the falsity of

insured's statements in the application process, or the intent of the insured, the issues are properly tendered to the jury for resolution." *City Natl. Bank*, 804 P. 2d at 466.

Facts similar to those in this case were considered in *Crews v. Shelter General Insurance Co.,* 393 F. Supp. 2d 1170 (W.D. Okla. 2005). In *Crews*, the insurer voided an insurance policy pursuant to § 3609)(A) on the grounds that the plaintiff had intentionally misrepresented the facts in his application for insurance covering his home. In the 2002 application, the plaintiff was asked if he had a prior felony conviction, and he responded "no." *Crews*, 393 F. Supp. 2d at 1172-73. The policy was issued and, after his home was destroyed by a 2003 fire, the plaintiff submitted a claim. During the investigation of the claim, the insurer conducted an examination under oath, and asked the plaintiff if he had ever been convicted or arrested for a felony; the plaintiff responded affirmatively. He explained that he pled guilty to a felony drug charge in the late 1970's; he believed he received a deferred sentence, and he did not spend time in jail. *Id.* at 1173. The insurer reviewed court records and determined that, in 1979, the plaintiff had pled guilty and received a suspended sentence for a felony drug charge. Relying on § 3609(A) and its underwriting regulations, the insurer voided the policy on the basis that the insured had misrepresented his criminal history in the application, and its underwriting policies precluded insuring convicted felons.

The insured sued, asserting claims for breach of the contract of insurance and bad faith. The insurer moved for summary judgment, arguing the undisputed facts established it was entitled to void the policy pursuant to § 3609(A) because the plaintiff admittedly failed to disclose his past felony conviction on the insurance application. The Honorable Vicki Miles-LaGrange denied the motion, finding disputed facts as to the requisite element of intent to deceive. *Crews,* 393 F. Supp. 2d at 1176-77.

Relying on *Hays* and the Oklahoma decisions requiring the insurer to prove the insured's intent to deceive in order to avoid its policy obligation, Judge Miles-LaGrange found that the facts and inferences therefrom, construed in the plaintiff's favor, created a material factual dispute regarding his intent. In doing so, she noted that, although he responded "no" to the relevant question on the policy application, the plaintiff readily admitted his prior felony when examined under oath during the insurer's investigation of his claim:

> [I]f Mr. Crews truly intended to deceive Shelter by lying about his criminal history on the insurance application, it is highly unlikely he would have acknowledged his criminal history during the taking of the recorded statement. The Court finds that one may reasonably infer from Mr. Crews's recorded statement that he had no intention to deceive at the time of his previous nondisclosure.

*Crews,* 393 F. Supp. 2d at 1176 n. 4. Judge Miles-LaGrange concluded that this inference, coupled with the plaintiff's expressed belief that the sentence was deferred rather than suspended, created a factual dispute precluding summary judgment. *Id.* at 1176-77.

The Court agrees with the rationale in *Crews* and finds it applicable to this case. Although Plaintiff denied the existence of a prior felony conviction in the Policy application, he readily admitted it when he was examined under oath during ANPAC's investigation of his claim and during his subsequent deposition in this case. Furthermore, he has testified that he did not intend to deceive ANPAC and that he did not believe the 50-year-old rape conviction would impact ANPAC's decision to insure his vehicle. Although ANPAC suggests the only credible evidence supports an intent to deceive, issues of credibility are not properly resolved at the summary judgment stage. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000) (citations omitted). Whether Plaintiff intended to deceive ANPAC presents a material factual dispute

precluding summary judgment.[6] Accordingly, ANPAC's motion is denied as to Plaintiff's claim that it breached the contract of insurance.

Bad faith claim:

ANPAC also seeks judgment on Plaintiff's claim that it breached its duty of good faith and fair dealing in connection with its denial of Plaintiff's claim and its decision to void the Policy. ANPAC argues that, because there was no breach of the policy, there cannot be a breach of the duty of good faith; alternatively, it argues that the duty is not violated where the insurer has a reasonable and good faith belief that coverage is precluded. Plaintiff contends that material fact disputes preclude judgment on this claim.

Under Oklahoma law, an insurer has an implied duty to deal fairly and act in good faith toward its insured, and the violation of that duty gives rise to an action in tort. *Christian v. American Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions." *Conti v. Republic Underwriters Ins. Co.* 782 P.2d 1357, 1360 (Okla.1989) (citing *McCorkle v. Great Atlantic Insurance Co.,* 637 P.2d 583 (Okla. 1981)).

"Bad faith cannot exist if an insurer's conduct was reasonable under the circumstances." *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170-171 (Okla.2000). *See also Southern Hospitality, Inc. v. Zurich American Ins. Co.* 393 F.3d 1137, 1142 (10th Cir. 2004). "The decisive question is whether the insurer had a good faith belief, *at the time its performance was requested*,

---

[6]As Plaintiff points out, ANPAC also bears the burden of proving the allegedly intentional misrepresentation was material to its decision to issue the Policy or its assessment of the risk it assumed. Okla. Stat. tit. 36 § 3609(A); *City Nat. Bank & Trust,* 804 P. 2d at 466. Because the Court has concluded there is a material fact dispute regarding the essential element of intent to deceive, it need not address the issue of materiality in ruling on the motion.

13

that there was a justifiable reason" for its decision. *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 798 -799 (10th Cir. 1995) (emphasis added) (citing *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir.1994) and *Oulds v. Principal Mutual Life Insurance Co.*, 6 F.3d 1431, 1437 (10th Cir. 1993)); *Buzzard v. Farmers Insurance Co.*, 824 P.2d 1105, 1109 (Okla. 1991).

This Court's task, when presented with a motion for summary judgment on an insured's claim against an insurer for bad faith, was explained by the Tenth Circuit as follows:

> A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may reasonably be perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Oulds*, 6 F.3d a 1436-37 (citations omitted).

It is well established that an insurer does not act in bad faith by disagreeing with an insured regarding coverage, and resort to a judicial forum does not constitute bad faith; furthermore, a ruling that the insurer's decision was incorrect does not mean that it acted in bad faith:

> We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*McCorkle v. Great Atlantic Ins. Co.* 637 P.2d 583, 587 (Okla. 1981) (citations omitted). Thus, even if a jury determines the insurer's decision was incorrect, that determination does not necessarily mean that the insurer acted in bad faith in reaching that decision.

In Oklahoma, the insurer's duty to act reasonably extends to the manner in which the insurer

14

investigates an insured's claim. *Buzzard*, 824 P.2d at 1109 (insurer has a duty to "conduct an investigation reasonably appropriate under the circumstances."). However, the duty to investigate is not unlimited, and is judged according to the circumstances. *Roberts v. State Farm Mutual Automobile Insurance Company*, 2003 WL 1559155 **4 (10th Cir. Mar. 26, 2003) (applying Oklahoma law). In *Roberts*, the plaintiff argued that the insurer acted in bad faith by failing to conduct a reasonable investigation because it could have obtained additional information from medical providers which would have presented sufficient information to support plaintiff's claim. The court rejected that argument, noting "[o]f course, State Farm could have scheduled interviews with his doctors, sought narrative reports, or followed up with his health care providers to ensure that no relevant information was for whatever reason omitted from the records. Under Oklahoma law, however, an insurer's investigation need only be reasonable, not perfect." *Id.* (citing *Buzzard*, 824 P. 2d at 1109).

In this case, Plaintiff relies on Judge Miles-LaGrange's decision in *Crews,* as she denied the insurer's summary judgment motion on a bad faith claim because the plaintiff argued the insurer did not investigate whether the plaintiff's failure to disclose a prior felony was an intentional effort to deceive the insurer. *Crews*, 393 F. Supp. 2d at 1178. She concluded that the insurer was charged with knowledge of Oklahoma law at the time it decided to void the policy, and was thus charged with knowledge that it could not void the policy unless the misrepresentation was made with the intent to deceive. *Id.* Construing the record most favorably to the plaintiff, Judge Miles-LaGrange concluded the factual record presented differing inferences regarding the reasonableness of the insurer's belief that Oklahoma law authorized it to void the insurance policy. Accordingly, she denied the insurer's summary judgment motion. *Id.*

The Court finds the facts of this case distinguishable from those in *Crews* because here ANPAC also had information from its adjuster suggesting a dispute regarding the source of the damage to Plaintiff's vehicle. This information, along with ANPAC's belief that a misrepresentation was made on the Policy application, forecloses a "clear showing" that the insurer acted unreasonably in the handling of the claim. As the Oklahoma courts have recognized, the insurer's investigation need not be perfect; the insurer is required only to conduct an investigation that is reasonable under the circumstances. *Roberts,* 2003 WL 1559155, at **4; *Buzzard*, 824 P. 2d at 1109. Plaintiff offers no persuasive argument or evidence to support a contention that ANPAC investigated in bad faith.

In this case, the Court concludes the facts in the record establish that ANPAC's decision to deny coverage and void the Policy, while potentially exposing it to liability for breaching the insurance contract, do not rise to the level of bad faith under Oklahoma law. That it denied coverage and voided the Policy does not mean it acted it bad faith. Plaintiff has failed to offer factual evidence sufficient to create a material dispute regarding his bad faith claim. ANPAC's motion is granted as to that claim.

Conclusion:

For the foregoing reasons, the motion for summary judgment of ANPAC [Doc. No. 12] is GRANTED in part and DENIED in part. The motion is granted as to Plaintiff's claim for breach of the duty of good faith and fair dealing. The motion is denied as to Plaintiff's claim that ANPAC breached the contract of insurance, and the case will proceed on that claim.

IT IS SO ORDERED this 28th day of December, 2011.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE